## WHITE *vs.* FURTZWANGLER.

1. Under the evidence, it seems that the jury found too small a sum in favor of defendant in error, rather than too large.
2. If there were any error in the charge complained of in the motion for new trial, it was error favorable to plaintiff in error.

May 4, 1888.

Mortgages. Verdict. Charge of court. Before Judge WELLBORN. Lumpkin superior court. April term, 1887.

Furtzwangler filed his petition to foreclose his mortgage on two lots of land, containing eighty acres, and "also the water-ditch running from Camp and Crooked creek to said lots of land, used for mining purposes, all together known as the Pigeon Roost gold mine." He alleged that this mortgage was given by George W. White to secure a promissory note for $5,000, and that 300 had been paid thereon.

White interposed his defence to this effect: He bought from plaintiff the two lots of land and the water-ditch, with the flumes, trestles, privileges, etc. connected with the ditch, as one entire property and for one entire price, which was $6,500. At the time of the pur-

chase he paid $1,500, received a fee simple warranty deed to the entire property, and as part of the same transaction made his note for $5,000 and a mortgage to secure it. Afterwards he paid $1,300 on the note. The two lots, at the time of the purchase and now are not of any appreciable value except for mining purposes, for which their value was and is almost entirely dependent on the accessibility of a reliable supply of water. The only water procurable for mining on the lots is that furnished by the ditch, and thus the control and use of the ditch and water supplied by it are the principal elements of value in the entire property, and constituted the only inducement to the purchase. Without the ditch, the lots were not at the time of the purchase, and are not now, worth more than $1,500. For these reasons, the land and ditch were bought as an entire property and for one entire price. All these facts were then and are now well-known to the plaintiff. After his purchase, the defendant sold the lots to the Pigeon Roost Gold Mining Company for one entire price, which was a number of shares of stock in that company and its promissory note for $5,000, and he made it a conveyance and warranty title to the entire property, taking its mortgage to secure the note. The stock was based solely on this property, the company having no other property, and the value of the note and mortgage were wholly dependent on the property. After this latter sale, while defendant was in possession of the entire property, as president of the company, one Barlow filed his bill against the defendant; and after due proceedings, the title to the ditch and the sole right to its use and control were adjudged to be in Barlow. Wherefore defendant entirely lost his valuable property, the company being insolvent except as to the lots of land ; and hence he says he ought not to be compelled to pay

plaintiff's note and mortgage, and asks for a rescission of the entire contract or a reduction in the contract price, and that the mortgage may be cancelled, etc.

The plaintiff set up, by way of reply, that respondent bought with full knowledge that the title to the ditch was unsafe; that the property was not sold as a whole, but respondent agreed to purchase the land and take the ditch along with it, knowing that the title to it was in dispute, or soon would be, and agreeing to release the plaintiff from a warranty, so far as it was concerned, and take his chances on the title to it.

On the hearing, the note and mortgage were introduced; also a warranty deed from the plaintiff to the defendant to the land, the ditch, flume, etc., the ditch being stated to be now conveying water to said land for mining; also, as of the same date with this deed, a written release from the defendant to the plaintiff, stating that, notwithstanding the warranty deed, it was agreed that the plaintiff should not in any way be liable so far as related to the water-ditch, its privileges and easements, if the title as conveyed in the deed should fail, "except further, if the said Furtzwangler should fail to obtain title to said ditch from all the stockholders of the Pigeon Roost Gold Mining Company, . . . . then he is to be liable on said warranty to that extent only."

The following oral testimony, in substance, was introduced: The defendant testified that he purchased the land with the water-ditch as one entire property for $6,500, the consideration being named $10,000 in the deed, to help him in any sale he might want to make; that there was no other reliable supply of water to mine on the lots; that the water and ditch constituted nine-tenths of the value of the property; that he paid more than the land was worth, and would not have bought at all

without the ditch and water; that he had made valuable improvements, expending large sums cleaning out and repairing the ditch, etc.; that he had no notice whatever of Barlow's claim until after his own purchase; that he got no reduction in the price on account of that claim, but on the contrary was positively assured that the plaintiff owned the ditch, except that the Pigeon Roost company might have some interest in it, and he then gave the release of warranty to the plaintiff; that the plaintiff had never given him a deed from the stockholders of the company to their right to the ditch, as he agreed to do, on securing the release of warranty; and that he had never been disturbed in possession by any of the stockholders of that company. The defendant introduced other evidence, substantially to the same effect, as to the necessity of the water to the mine and the great impairment in the value of the property by reason of the loss of the water; that water can be got to the lots only by this ditch or by purchase of the Hand company; and that it was worth twelve cents a foot. He also showed by the attorney who drew the deed and mortgage, that the property was sold as one entire property; that the defendant would not have bought without the ditch; that the plaintiff seemed uncertain about the title, but did not say it was not good; and that the witness gave an opinion that it was good. There was further proof that the plaintiff tried to sell the note and mortgage to a third party for $2,500.

In reply, the plaintiff introduced several witnesses. One McAfee swore that he was present when the deed was executed; that he was the plaintiff's agent; that he was instructed not to warrant the title to the ditch, and the defendant agreed to release the plaintiff from this warranty, and in consideration of this the plaintiff agreed to reduce the price from $8,000 to $6,500; that

the land was worth $8,000 without the ditch; that defendant told witness that Barlow had offered to give him the ditch in exchange for rights, etc., but would not accept it because he had Barlow where he wanted him; that at the time of the sale, the plaintiff said his title to the ditch was as a stockholder in the Pigeon Roost company, which witness thought was one-twentieth; that the defendant thought the title was good, but plaintiff was doubtful·as to it, and said he was willing to warrant the title to the land but defendant would have to take the ditch for what it was worth; that the water was a part of the consideration; and that the mine could be worked to a considerable extent without the water.    One Huff swore that he met the defendant before the sale and told him that he was Barlow's agent and Barlow claimed the ditch, and there would be a lawsuit about it; that the land was worth $5,000 without the ditch; that the mine could be partially worked without water, but not successfully; and that it was the custom of mining companies to buy the water with which they worked.    By Cantrell and Duckett, the plaintiff showed that the lots were worth $5,000 without the ditch (Duckett said he would not give that amount unless he knew he could buy water); and that the mine could be partially worked without the water.

W. P. Price, the plaintiff's attorney, swore that, in a conversation with defendant, the latter told him he thought of buying these lots; and witness gave him notice, as Barlow's attorney, that Barlow claimed the title to the ditch; that witness owned a fifth interest and represented two-fifths interest in the lots, and these three were sold to plaintiff, no interest in the ditch being conveyed in this transaction; and that, according to what witness got for his fifth, the land would be worth $10,000.

The jury found for the plaintiff $4,000.    The defendant moved for a new trial on the following grounds :

(1)–(2) The charge of the court was contrary to law and evidence.

(3) Because the court erred in charging the jury as follows : " In this case, the defendant cannot recover of the plaintiff for a breach of his warranty.    But if there has been failure of consideration, total or partial, he may have the value of the property for which the title fails set off against the purchase-money yet due by him, as far as it will go, and the remainder would be the amount you would find, unless you should believe that the defendant agreed, at the time of the trade, to take the water-ditch at his own risk, and that he had, before or at the time, notice of the defect of the plaintiff's title to the ditch.    If you think he took it at his own risk and simply agreed to buy such right as the plaintiff had to it, then he would not be entitled to any deduction from the amount due by him on account of the loss."

The motion was overruled, and the defendant excepted.

M. G. Boyd, by brief, for plaintiff in error.

Price & Charters, contra.

Simmons, Justice.

1. The official report in this case shows the nature of the pleadings, the evidence and the grounds of the motion for a new trial.    We have carefully examined this record and have failed to find any error committed by the court below against this plaintiff in error.    The evidence in the case more than sustains the verdict of the jury.    Upon a careful reading of the evidence, we are inclined to think that the verdict is too small—that

the jury should have found the whole amount, principal and interest, against the defendant in the court below, instead of deducting the interest from the claim. While the evidence shows that the defendant purchased from the plaintiff the two lots of land and the ditch which brought the water through the land, and that he was deprived of the use of the water by one Barlow, who had recovered it from him in another suit, the evidence further shows that at the time he purchased the land and the ditch from Furtzwangler, he gave Furtzwangler a release from his warranty in the deed so far as the ditch and the water were concerned; stipulating in the release that he only held Furtzwangler liable on his warranty in the event that the stockholders of the Pigeon Roost Gold Mining Company should deprive him of the use of the ditch and the water. The evidence does not disclose that Barlow was one of these stockholders of the Pigeon Roost Gold Mining Company. Barlow, who had recovered this ditch and water from White, the defendant in the court below, not being one of the stockholders of the Pigeon Roost Gold Mining Company, Furtzwangler was not liable to the defendant, White, for any injury or damage sustained by him by reason of Barlow's depriving him (White) of the use of the ditch and the water. White took the risk when he purchased, and released Furtzwangler from his warranty against all persons except the stockholders of the Pigeon Roost Gold Mining Company. He therefore had no warranty from Furtzwangler against Barlow or any one else except the stockholders of the Pigeon Roost Gold Mining Company. Having released Furtzwangler from his warranty, except as to these stockholders, and Barlow not being one of them, and Barlow having ejected him or deprived him of the use of the ditch and water, he was not entitled to set up

this loss of the use of the ditch and water against Furtz-wangler.

2. There was no error against the plaintiff in error in the charge complained of in the motion for a new trial. If there was error in the charge complained of, it was against the defendant in error, because it seemed to take away from the consideration of the jury the written release of White to Furtzwangler, and place the issue as to the risk of the deprivation of the ditch and water upon the parol testimony of the witnesses.

Judgment affirmed.